UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAN CHERNER,

                          Plaintiff,

              -against-

CF BANKSHARES INC., et al.,

                          Defendants.

**OPINION AND ORDER**

24-CV-02812 (PMH)

PHILIP M. HALPERN, United States District Judge:

Dan Cherner ("Plaintiff"), an attorney, brings this action *pro se*,[1] against his former employer, CFBank, N.A. ("CFBank"), its purported holding company, CF Bankshares, Inc. ("Bankshares"), (together, "Entity Defendants"), and individuals associated with the Entity Defendants, including Chief Executive Officer Timothy O'Dell ("O'Dell"), Chairman of the Board of the Entity Defendants Robert Hoeweler ("Hoeweler"), board members of the Entity Defendants Thomas Ash ("Ash"), Edward Cochran ("Cochran"), James Frauenberg II ("Frauenberg"), Sundeep Rana ("Rana"), and David Royer ("Royer"), and Chief Operations Officer of CFBank Marianne McKinney ("McKinney") (together, "Individual Defendants," and collectively, "Defendants"). Plaintiff filed his initial Complaint on April 12, 2024. (Doc. 1). On September 9, 2024, with the Court's leave, Plaintiff filed his Amended Complaint ("AC"), the operative pleading herein. (Doc. 13, "AC").

---

[1] Generally, "[p]ro se litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018). However, an attorney is not entitled to the "special solicitude" afforded to *pro se* litigants in construing the arguments in their filings. *United States v. Pierce*, 649 F. App'x 117, 118 n.1 (2d Cir. 2016); *Mitchell v. Con Edison*, 531 F. App'x 140, 141 (2d Cir. 2013). Accordingly, Plaintiff, an attorney, is not entitled to special solicitude. *See Bank v. Sirlin*, 830 F. App'x 690, 690 (2d Cir. 2020) (citing *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010)).

Plaintiff presses twenty-four (24) claims for relief in the AC: (1)-(2) Gender Discrimination and Hostile Work Environment[2] in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (asserted against the Entity Defendants); (3) Age Discrimination pursuant to the Age Discrimination in Employment Act ("ADEA") (asserted against the Entity Defendants); (4) Gender Discrimination pursuant to the Equal Pay Act (asserted against all Defendants); (5)-(6) Gender Discrimination and Hostile Work Environment in violation of the New York State Human Rights Law ("NYSHRL") (asserted against all Defendants); (7) Age Discrimination in violation of the NYSHRL (asserted against all Defendants); (8)-(9) Gender Discrimination and Hostile Work Environment in violation of the Ohio Revised Code ("ORC") (asserted against all Defendants); (10) Age Discrimination in violation of the ORC (asserted against all Defendants); (11), (16) Breach of Contract under New York and Ohio law (asserted against the Entity Defendants); (12-15), (17-20) Fraud claims under New York and Ohio law (asserted against all Defendants); (21) Wrongful Discharge under Ohio law (asserted against the Entity Defendants); (22, 24) Intentional Infliction of Emotional Distress under New York and Ohio law (asserted against all Defendants); and (23) Negligent Infliction of Emotional Distress under New York law (asserted against all Defendants). (*See generally* AC).

Defendants served, pursuant to the briefing schedule set forth by the Court, their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 9, 2024. (Doc. 17; Doc. 18, "Shenker Affirm."; Doc. 19, "McKinney Decl."; Doc. 20, "Def. Br."). Plaintiff served his

---

[2] Although Plaintiff identifies certain of his claims as "workplace harassment," the Court construes them as hostile work environment claims. (*See* AC at 14 (referring to the Defendants having "created a hostile work environment based on gender"); *see also id.* at 17-18, 21, 23-24).

opposition on November 5, 2024 (Doc. 21, "Cherner Decl."; Doc. 22, "Pl. Br."), and the motion was fully briefed with the filing of Defendants' reply (Doc. 26, "Reply") on November 27, 2024.

On November 27, 2024, Defendants served a motion to strike the Cherner Declaration (the "Motion to Strike"). (Doc. 21; Doc. 28; Doc. 29, "Def. Strike Br."). Plaintiff served his opposition and a "cross-motion" to strike on December 20, 2024 (Doc. 36; Doc. 37, "Pl. Strike Br."), and Defendants served their reply and opposition to Plaintiff's "cross-motion" to strike on January 3, 2025 (Doc. 41). The motions were fully briefed upon Plaintiff's filing of his Reply in further support of his "cross-motion" to strike on January 10, 2025. (Doc. 44).

Finally, on January 10, 2025, Plaintiff filed a motion for sanctions against Defendants pursuant to Rule 11 of the Federal Rules of Civil Procedure, 18 U.S.C. § 1927, and the Court's inherent authority (the "Sanctions Motion"). (Doc. 45; Doc. 46; Doc. 47, "Pl. Sanctions Br.").[3] Defendants served their opposition on January 24, 2025 (Doc. 49, "Def. Sanctions Br."), and the motion was fully briefed with the filing of Plaintiff's reply (Doc. 50) on February 7, 2025.[4]

---

[3] On November 5, 2024, Plaintiff included a purported request for sanctions within his opposition to Defendants' motion to dismiss. (*See* Pl. Br. at 22-25). Defendants filed opposition to this request on November 27, 2024 (Doc. 27). However, on December 20, 2024, instead of a substantive reply brief, Plaintiff filed papers indicating that he was "withdraw[ing] without prejudice, the portion of his opposition to defendants' motion to dismiss which seeks sanctions, as he served a separate motion for sanctions on defendants on December 19, 2024" (*see* Doc. 38) but had not yet filed it with the Court at that time. Therefore, the Court declines to consider the portions of Plaintiff's opposition concerning sanctions (Pl. Br. at 22-25), Defendants' opposition to such argument (Doc. 27), and Plaintiff's reply (Doc. 38), as both withdrawn and procedurally improper for failure to file a corresponding notice of motion. *Keesh v. Quick*, No. 19-CV-08942, 2022 WL 2160127, at *7 (S.D.N.Y. June 15, 2022); *see also Corr. Officers Benevolent Ass'n of Rockland Cnty. v. Kralik*, No. 04-CV-02199, 2011 WL 1236135, at *1 n.2 (S.D.N.Y. Mar. 30, 2011). The Court does, however, consider Plaintiff's Sanctions Motion.

[4] On February 7, 2025, Plaintiff also filed a letter requesting oral argument on the motion to dismiss, motions to strike, and motion for sanctions. (*See* Doc. 51). In its discretion, and in accordance with Rule 4(L) of this Court's Individual Practices, the Court determines that oral argument is not necessary and will decide the motions on the papers only.

For the reasons set forth below, Defendants' motion to strike is DENIED; Defendants' motion to dismiss is GRANTED in part and DENIED in part; and Plaintiff's motion for sanctions is DENIED. The Court will address each motion separately.

## BACKGROUND

The allegations in the AC relevant to the Parties' motions are recited below.

### I.    Plaintiff's Banking Background and Start of Employment at CFBank

Plaintiff, a commissioned bank examiner and attorney, and who at all times herein was over 40 years old, was engaged by CFBank in consulting in September 2022. (AC ¶¶ 30, 107). Prior to consulting for CFBank, Plaintiff worked at the Federal Deposit Insurance Corporation ("FDIC"), between 2010 and 2014. (*Id.* ¶ 29). CFBank is a bank with a national charter, and therefore, retained a "BSA Officer" to coordinate and implement its BSA Compliance Program. (*Id.* ¶¶ 12-15).[5] According to Plaintiff, a bank required to have a BSA Compliance Program must adhere to the requirements set out in Title 12 of the Code of Federal Regulations § 21.21, which details certain requirements associated with a "BSA Officer" position. (*Id.* ¶¶ 18-28).

The former BSA Officer at CFBank, LaDawn Whitman ("Whitman"), ceased working there after the summer of 2022. (*Id.* ¶ 31). Plaintiff expressed interest in the open position, stating that he would like a salary of $150,000, and Defendant McKinney responded that CFBank would at least be able to match Plaintiff's request as she was 100% certain that Whitman was making at least over $100,000. (*Id.* ¶¶ 33-34). However, after discussion with CFBank's HR Manager, Ivory

---

[5] Plaintiff does not define "BSA." However, the Court may take judicial notice "of any fact that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Punin v. Garland*, 108 F.4th 114, 120 n.3 (2d Cir. 2024). Therefore, the Court takes judicial notice of the fact that "BSA" is an acronym for the "Bank Secrecy Act." *See SEC v. Alpine Sec. Corp.*, 982 F.3d 68, 73 (2d Cir. 2020) ("Congress enacted the Foreign Transactions Reporting Act of 1970, or Bank Secrecy Act (BSA), in 1970.").

Brown ("Brown"), Plaintiff was notified by Brown and Defendant McKinney that Whitman's salary was actually less than $100,000, and Defendant McKinney had been wrong. (*Id.* ¶ 35). Plaintiff alleges, upon information and belief, that this was a lie. (*Id.*). Plaintiff's ultimate salary offer for employment, as "VP, BSA Officer" was "below $100,000." (*Id.* ¶ 36). Plaintiff accepted and signed the employment offer on September 22, 2022.

II.    Plaintiff's Work at CFBank as "VP, BSA Officer" and Alleged Gender Discrimination

According to Plaintiff, the offer of employment clarified that his new position was an "officer-level position" and rendered him "responsible for the CFBank's BSA Program." (*Id.* ¶ 39). Plaintiff considered this to mean that he would be responsible for the day-to-day running of the bank's BSA Compliance Program. (*Id.* ¶ 40). Plaintiff, in accepting this position, states that he "agreed not to accept any work from other financial institutions and, in effect, had to shut down his separate business," which resulted in lost business opportunities and revenue. (*Id.* ¶ 44). At or around the start of Plaintiff's employment at CFBank, he asked Defendant McKinney when he would be appointed by the Board of Directors as BSA Officer, officially, which he alleges is required by regulation. (*Id.* ¶ 45). To his surprise, Defendant McKinney responded that the Board of Directors had already appointed another individual as BSA Officer, a female, Pam Foster ("Foster"). (*Id.* ¶ 46). Plaintiff was further surprised by this because to his knowledge, Foster's title was "Compliance and CRA Officer," and while he possessed the qualifications required to be the BSA Officer, Foster did not. (*Id.* ¶ 46).

Over the next several months, Plaintiff continued to tell Defendant McKinney that this appointment was improper, and that the Board of Directors needed to appoint him as BSA Officer, to which Defendant McKinney responded that she would have the Board of Directors appoint him once he had become "acclimated." (*Id.* ¶ 47-48). Further, Plaintiff continuously asked Defendant

McKinney, as well as other individuals, to get information he needed to begin his work as "VP, BSA Officer," but both Defendant McKinney, and these other individuals, failed to give him the information he needed to sufficiently complete his job requirements and run the BSA Compliance Program. (*Id.* ¶¶ 49-54). Plaintiff noticed that the BSA Compliance Program was deficient in many respects, and thus attempted to take steps to remediate it, but was met with resistance from Defendant McKinney. (*Id.* ¶¶ 55, 60-61, 65). For example, Defendant McKinney told Plaintiff to stop "bothering" certain individuals for information (*id.* ¶ 55); prevented Plaintiff from ever being introduced to the Board of Directors or appointed as BSA Officer (*id.* ¶¶ 58-61); and "continued to intimidate and harass [Plaintiff] and threaten his employment," when on numerous occasions Plaintiff told Defendant McKinney he should be reporting to the Board of Directors, but had no means of approaching the Board without "fear of adverse employment action" (*id.* ¶¶ 63-65).

Of the individuals Plaintiff attempted to collect information from in order to adequately conduct his duties as VP, BSA Officer, "certain female individuals were told by [D]efendant McKinney that they did not have to respond to [Plaintiff], and they could ignore his requests for information or documents," which Plaintiff viewed as discriminatory. (*Id.* ¶ 68). Further, it was Plaintiff's belief that Defendant McKinney's actions "constituted a deliberate and malicious campaign of harassment and intimidation, [of] which others participated." (*Id.* ¶ 69).

Despite Defendant McKinney's actions, Plaintiff nevertheless claims to have improved various aspects of CFBank's BSA Compliance Program, despite never being appointed officially, including implementing and calibrating a new BSA transaction monitoring system. (*Id.* ¶ 71). Plaintiff continued this work up until April 2023, while simultaneously conducting a BSA audit, which had been scheduled for on or around that time. (*Id.* ¶¶ 73-74).

III.    Plaintiff's Termination, Purported Younger Replacement, and Right to Sue Letters

On April 12, 2023, Plaintiff was notified that he was terminated by Brown, who stated that "banks have been having to make difficult decisions in the past 6-8 months," and that the bank "was going in a different direction." (*Id.* ¶¶ 75-77). When Plaintiff asked what this meant, and why he was never appointed as BSA Officer, Brown was unable to reply. (*Id.* ¶¶ 78-79). Plaintiff alleges that upon his termination, and upon information and belief, Foster either continued as BSA Officer in his place, or that Ashley Garneret ("Garneret") a female under 40 years of age, who did not have the same qualifications as him to be BSA Officer, took his place. (*Id.* ¶ 85). Plaintiff alleges that these circumstances created a "hostile work environment based on gender," as Defendant McKinney "was and is, discriminating against males." (*Id.* ¶¶ 86-87). Plaintiff also alleges that his termination was based on his age, under the "wrongful belief that he could not act as BSA Officer and fulfill the duties of BSA Officer because of his age." (*Id.* ¶ 117).

Subsequently, and as a result of the above, Plaintiff filed charges with the Ohio Civil Rights Commission ("OCRC") and Equal Employment Opportunity Commission ("EEOC"), for claims of discrimination based on gender and age. (*Id.* ¶ 98). Plaintiff received Right to Sue Letters from the OCRC and EEOC on April 18, 2024, and August 15, 2025, respectively. (*Id.* ¶ 99).

## MOTION TO STRIKE

I.    Motion to Strike and Documents Properly Considered under Rule 12(b)(6)

As an initial matter, Defendants' Motion to Strike fails to specify the particular Federal Rule of Civil Procedure it is brought under in violation of Local Civil Rule 7.1. *See Citibank, N.A. v. Super Sayin' Publ'g, LLC*, No. 14-CV-05841, 2017 WL 462601, at *2 (S.D.N.Y. Jan. 17, 2017) (holding that plaintiff's notice of motion violated Local Civil Rule 7.1, where it failed to specify "the applicable rule or statute pursuant to which the motion [was] brought," warranting denial of

the motion). Likewise, Plaintiff's "cross-motion" is not properly before the Court as Plaintiff failed to file an associated notice of motion. *Keesh v. Quick*, No. 19-CV-08942, 2022 WL 2160127, at *7 (S.D.N.Y. June 15, 2022); *see also Corr. Officers Benevolent Ass'n of Rockland Cnty. v. Kralik*, No. 04-CV-02199, 2011 WL 1236135, at *1 n.2 (S.D.N.Y. Mar. 30, 2011) (holding that where the plaintiffs submitted a "cross-motion" within their opposition brief, and never filed a notice of motion, there was "no cross-motion before [that] Court."). The real issue before the Court is whether any of the documents offered by either side – all of which are outside the four corners of the AC – may be utilized to decide Defendants' motion to dismiss. Despite the basic procedural infirmities concerning each parties' "motion," the Court addresses the parties' respective arguments to determine which documents, if any, the Court will consider in evaluating Defendants' motion to dismiss. Case law is crystal clear that in connection with a motion to dismiss, no motion is necessary to challenge the use of documents outside the four corners of the pleading.

## Standard of Review

On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit.").

Even if a document is not incorporated by reference into the complaint, the Court may still consider such document "where the complaint 'relies heavily upon its terms and effect,' thereby

rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.2d 391, 398 (2d Cir. 2006)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also Perry v. Mary Ann Liebert, Inc.*, No. 17-CV-5600, 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018), *aff'd*, 765 F. App'x 470 (2d Cir. 2019). Further, and importantly here, where a document is of "disputed authenticity," the Court may not consider it on a motion to dismiss. *See Azzolini v. Marriott Intern., Inc.*, 417 F. Supp. 2d 243, 246 (S.D.N.Y. 2005) (collecting cases).

Where a document is not attached to the complaint or integral thereto such that it can be considered on a motion to dismiss, or where a document's authenticity is disputed, a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P. 12(d).

## Analysis

Defendants proffer the following documents at issue on this motion introduced via the McKinney Declaration and the Shenker Affirmation: (i) CFBank's alleged offer letter to Plaintiff (McKinney Decl., Ex. A, the "Offer Letter"); (ii) CFBank's alleged Board of Directors Meeting Minutes and Resolution of the Board of Directors (McKinney Decl., Ex. B, the "Meeting Minutes"); and (iii) a Letter of Determination from the Ohio Civil Rights Commission purportedly dismissing Plaintiff's inquiry for lack of jurisdiction (Shenker Affirm., Ex. B, the "Letter of Determination"). Additionally, Plaintiff proffers the following documents introduced via the Plaintiff's Declaration: (i) Letter Communications between the Parties pursuant to Rule 2(c) of

this Court's Individual Practices, setting forth legal arguments from Plaintiff and Defendants (Cherner Decl., Exs. A-D, "Rule 2(C) Letters"); (ii) a Notice of Right to Sue directed to Plaintiff from the OCRC (Cherner Decl., Ex. E, "OCRC Right to Sue"); and (iii) a Notice of Right to Sue directed to Plaintiff from the EEOC (Cherner Decl., Ex. F, "EEOC Right to Sue").

First, at this stage of the proceedings, the Court declines to convert Defendants' motion to dismiss to a motion for summary judgment. The breadth of the allegations alone, spanning 262 paragraphs, precludes such a conversion. The Court further declines to consider all of the documents detailed above, except for the OCRC Right to Sue and EEOC Right to Sue, as these documents are public records associated with administrative exhaustion, a "precondition to filing . . . Title VII claims." Thus the Court considers them both on judicial notice and as integral to the AC. *See Brown v. Cnty. of Westchester*, No. 22-CV-06146, 2024 WL 21937, at *3 (S.D.N.Y. Jan. 2, 2024); *Sternkopf v. White Plains Hosp.*, No. 14-CV-04076, 2015 WL 5692183, at *4 (S.D.N.Y. Sept. 25, 2015).

The motion papers make plain that there are disputes as to the authenticity of both the Offer Letter and the Meeting Minutes, and thus, the Court declines to consider either document in deciding the motion to dismiss. *See Sternkopf*, 2015 WL 5692183, at *4 ("[I]n addition to the requirement that the document be 'integral' to the complaint: (1) 'it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document;' and (2) '[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.'") (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006))). The Court also declines to consider any of the Rule 2(c) Letters as they violate Rule 2(c) of the Court's Individual Practices (*see* Rule 2(c) ("[t]he parties shall not submit copies of these letters to the Court")); and contain nothing of consequence to the motion papers.

Finally, the Court construes Defendants' motion to strike the Cherner Declaration as a request that the Court decline to consider the declaration itself in deciding the motion to dismiss. Specifically, Defendants argue that the Cherner Declaration improperly includes new factual allegations, absent from Plaintiff's AC, as well as legal argument to circumvent the Court's page limit requirements for opposition briefs. (Def. Strike Br. at 2-3). Plaintiff argues that there is no such legal argument within the declaration, yet also appears to concede that he did include additional facts and legal argument in order to address Defendants' inclusion of the Offer Letter and Meeting Minutes as support for the motion to dismiss. (*See* Pl. Strike Br. at 8-11).

Considering the Parties' respective arguments and upon review of the Cherner Declaration itself, the Court agrees with Defendants, finds that Plaintiff improperly includes both additional factual allegations and legal argument therein, and therefore declines to consider the content of the Cherner Declaration itself in analyzing Defendants' motion to dismiss. *See Curran v. Aetna Life Ins. Co.*, No. 13-CV-00289, 2016 WL 3843085, at *8 (S.D.N.Y. July 11, 2016) ("disregard[ing] all arguments presented in [the] declaration[,]" as including legal arguments in an attorney declaration is "improper" and can constitute a "thinly-veiled attempt to supplement Plaintiff's twenty-five page memorandum of law with more pages of legal argument than . . . allow[ed]").

The Court denies the "motions" to strike and will only consider the documents identified *supra* in connection with the motion to dismiss.

## MOTION TO DISMISS

### Standard of Review

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[6] A claim is plausible on its face "when the ple[d] factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

In addition, the Federal Rules of Civil Procedure require a heightened level of specificity when pleading claims sounding in fraud. Specifically, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), "the who, what, when, where, and how: the first paragraph of any newspaper story." *Backus v. U3 Advisors, Inc.*, No. 16-CV-08990, 2017 WL 3600430, at *9 (S.D.N.Y. Aug. 18,

---

[6] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

2017) (quoting *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 520

(S.D.N.Y. 2014)).

<u>**Analysis**</u>

I.      <u>Plaintiff's Federal Claims</u>

    A.  <u>First, Second, and Fourth Claims for Relief: Federal Discrimination and Disparate Pay Claims Based on Gender</u>

Plaintiff asserts federal claims for discrimination, hostile work environment, and unequal

pay on the basis of gender in violation of Title VII and the Equal Pay Act. The Court considers

each *seriatim*.

        i.  <u>Gender Discrimination in Violation of Title VII</u>

Plaintiff asserts his first claim for relief for gender discrimination in violation of Title VII

against the Entity Defendants.

Title VII "makes actionable *any* form of sex-based compensation discrimination." *Lenzi v.*

*Systemax, Inc.*, 944 F.3d 97, 110 (2d Cir. 2019) (citing 42 U.S.C. § 2000e-2(a)(1)). Claims under

Title VII are subject to the burden-shifting framework adopted in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973). However, at the motion to dismiss stage, only the first step—the

plaintiff's burden to allege a *prima facie* case of discrimination—is at issue. *See Littlejohn v. City*

*of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

"To establish a *prima facie* case of discrimination under Title VII . . . a plaintiff must allege

that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered

an adverse employment action; and (4) the adverse employment action occurred under

circumstances giving rise to an inference of discrimination." *Malloy v. Pompeo*, No. 18-CV-04756,

2020 WL 5603793, at *15 (S.D.N.Y. Sept. 18, 2020). At the motion to dismiss stage, a plaintiff

"need only give plausible support to a minimal inference of discriminatory motivation." *Vega v.*

*Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (internal quotation marks omitted). Further, "the plaintiff also may create a 'mosaic' of intentional discrimination by identifying 'bits and pieces' of evidence that together give rise to an inference of discrimination." *Hamilton v. Siemens Healthcare Diagnostics, Inc.*, No. 23-CV-07408, 2025 WL 863572, at *11 (S.D.N.Y. Mar. 18, 2025). "A common and especially effective method of establishing a *prima facie* case of discrimination" is "showing that the employer treated a similarly situated employee differently." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (internal quotation marks omitted).

Here, Defendants' motion only contests the fourth element, *i.e.*, whether "the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Malloy*, 2020 WL 5603793, at *15. Specifically, Defendants argue Plaintiff has not sufficiently alleged that any adverse action occurred *because of* Plaintiff's gender or any other protected characteristic; and that Plaintiff failed to allege "a single act on the part of any Defendant that could conceivably be interpreted as discriminatory or showing discriminatory intent." (Def. Br. at 5-6). The Court disagrees.

At this stage, Plaintiff has sufficiently cleared this "low pleading threshold" and shown an inference of discrimination by alleging that Plaintiff, a male, was treated less favorably than a less-qualified female, Pam Foster, who was appointed BSA Officer instead of him. (AC ¶¶ 34-48). Further, Plaintiff alleges he was unable to complete his job properly and was discriminated against by Defendant McKinney, when she told "certain female individuals" that they did not have to respond to Plaintiff and "could ignore his requests for information or documents." (*Id.* ¶¶ 68-69). Ultimately, Plaintiff was then terminated from his role as a "VP, BSA Officer," when he was told

14

that the "bank was going in a different direction," and the HR Manager was unable to provide any additional information as to the reason for his termination. (*Id.* ¶¶ 76-79).

Considering the above, and even though they may be extremely "thin," such allegations constitute "bits and pieces of evidence" that together create a "mosaic" sufficient to clear the low pleading threshold and constitute an inference of discrimination. *Hamilton*, 2025 WL 8693572, at *12 (holding that the plaintiff sufficiently stated a Title VII claim for gender discrimination at the motion to dismiss stage where he alleged that he was "treated less favorably than his former assistant, a woman"); *Styles v. Westchester Cnty.*, No. 18-CV-12021, 2020 WL 1166404, at *8 (S.D.N.Y. Mar. 10, 2020) ("[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis." (quoting *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (alteration in original)).

Accordingly, the Court finds that Plaintiff has pled sufficient facts to allege a gender discrimination claim at the motion to dismiss stage. Defendants' motion to dismiss Plaintiff's first claim for relief for gender discrimination in violation of Title VII is therefore denied.

## ii. Hostile Work Environment in Violation of Title VII

Plaintiff asserts his second claim for relief for hostile work environment based on gender discrimination in violation of Title VII against the Entity Defendants.

To state a hostile work environment claim under Title VII, a plaintiff must allege: "[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (alterations in

original)). The harassing conduct must, of course, be caused by the plaintiff's "membership in a protected class," *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999), and the test "has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Thomson v. Odyssey House*, No. 14-CV-03857, 2015 WL 5561209, at *13 (E.D.N.Y. Sept. 21, 2015) (quoting *Littlejohn*, 795 F.3d at 321), *aff'd*, 652 F. App'x 44 (2d Cir. 2016). While a single severe incident may suffice, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks omitted). The focus is on the totality of the circumstances. *Smith v. Westchester Cnty. Dep't of Corr.*, No. 12-CV-03941, 2014 WL 4384104, at *9 (S.D.N.Y. Sept. 3, 2014). A totality-of-the-circumstances evaluation means that courts examine:

> frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance.

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (alterations in original)). Thus, "a plaintiff need only plead facts sufficient to support the conclusion that []he was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of h[is] employment altered for the worse." *Jeanty v. Precision Pipeline Sols., LLC*, No. 18-CV-07721, 2019 WL 3532157, at *4 (S.D.N.Y. Aug. 2, 2019) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted)). Importantly, "[h]ostile work environment claims are meant to protect individuals from abuse and trauma that is severe . . . not . . . to promote or enforce civility, gentility or even decency." *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591

(S.D.N.Y. 2018) (quotation marks and citation omitted). Thus, "excessive criticism and rudeness do not constitute a hostile work environment." *Ramirez v. Temin & Co.*, No. 20-CV-06258, 2021 WL 4392303, at *8 (S.D.N.Y. Sept. 24, 2021).

The parties do not dispute that Plaintiff perceived the environment to be abusive and severe. The question then is whether—looking at the totality of the circumstances—the allegations suggest plausibly that a reasonable person would reach the same conclusion. Considering the allegations here, the Court finds that a reasonable person would not.

Plaintiff alleges that he was "harassed," "intimidated," threatened with "adverse employment action," was subjected to "a hostile work environment based on gender," (AC ¶¶ 63-65, 68, 86, 110, 111), and that "certain female individuals were told by defendant McKinney that they did not have to respond to [Plaintiff]," (*id.* ¶ 68). However, absent plausible allegations of causation, *i.e.*, that such conduct was "the result of his sex," Plaintiffs' allegations are insufficient to establish a hostile work environment claim under Title VII. *See Hamilton*, 2025 WL 863572, at *16; *see also Paupaw-Myrie v. Mount Vernon City School Dist.*, 653 F.Supp.3d 80, 105-106 (S.D.N.Y. 2023) (holding that even if the plaintiff plausibly alleged that defendant was "critical of [the p]laintiff," the hostile work environment claim still failed where the plaintiff failed to show that the "dissatisfaction arose from animus based on the plaintiff's [protected characteristic]").

Plaintiff's allegations do not rise to the level where a reasonable person could find them "severe" or "pervasive" enough to constitute a hostile work environment, nor has Plaintiff sufficiently tied the allegations to any "discriminatory animus" demonstrated by Defendants. Accordingly, Defendants' motion to dismiss Plaintiff's Title VII hostile work environment claim is granted.

iii. <u>Violation of Equal Pay Act</u>

Plaintiff asserts his fourth claim for relief on similar facts, alleging disparate pay in violation of the Equal Pay Act as a result of his gender against both the Entity Defendants and the Individual Defendants.

The Equal Pay Act ("EPA") "prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Craven v. City of New York*, No. 19-CV-01486, 2020 WL 2765694, at *7 (S.D.N.Y. May 28, 2020) (quoting *Kairam v. W. Side GI, LLC*, 793 F. App'x 23, 25 (2d Cir. 2019) (summary order)). Specifically, to prove a violation of the Equal Pay Act, a plaintiff must demonstrate that "(1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254-55 (2d Cir. 2014) (internal quotation marks and alterations omitted). "A plausible [Equal Pay Act] claim must include sufficient factual matter, accepted as true to permit the reasonable inference that the relevant employees' job *content* was substantially equal." *Kairam*, 793 F. App'x at 26 (emphasis in original). "The standard is 'demanding,' and requires that a plaintiff 'establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications.'" *Dass v. City Univ. of New York*, No. 18-CV-11325, 2020 WL 1922689, at *6 (S.D.N.Y. Apr. 21, 2020).

Here, at this stage, Plaintiff alleges that he was paid differently than an employee who performed equal work in violation of the EPA. Plaintiff alleges that when he was negotiating for the BSA Officer position at CFBank, he "expressed that he would like a salary of $150,000," to

18

which Defendant McKinney told Plaintiff that Whitman, the BSA Officer who previously worked for CFBank, "was making over $100,000, that [Defendant McKinney] was 100 percent certain that this was the case, and that the Bank would be able to at least match what [] Whitman's salary had been." (AC ¶¶ 33-34). However, Plaintiff alleges that his final offer for employment was "below $100,000." He alleges that even though CFBank's HR Manager, Brown, claimed Whitman was earning "less than $100,000" and Defendant McKinney notified Plaintiff that she had been "wrong" and that "Whitman's salary had been much less than $100,000," Plaintiff, "upon information and belief," believes that "both defendant McKinney and [] Brown lied to [him]." In fact Plaintiff alleges that Whitman was paid a higher salary than Plaintiff, even though Plaintiff was more qualified. (*Id.* ¶¶ 35-36, 121, 124). Plaintiff claims the position of BSA Officer is a position defined by regulation, is the same regardless of the individual, and thus, his position and Ms. Whitman's position were not only "substantially identical," but actually identical. (*Id.* ¶ 122).

Defendants push back on Plaintiff's allegations that Defendant McKinney and Brown lied to Plaintiff about Whitman's salary, because he alleges it "upon information and belief," claiming that such a conclusory allegation is insufficient to state a claim for relief, even at the motion to dismiss stage. (Def. Br. at 12-13). However, Plaintiff also alleges, without the "upon information and belief" qualifier, that "Defendant McKinney lied to Mr. Cherner when she told him that Ms. Whitman's salary was less than $100,000." (AC ¶ 122). Further, the case cited by Defendants is distinguishable in that, the court there determined that the plaintiff failed to sufficiently plead an Equal Pay Act Claim because "[t]he Complaint does not identify any male employee who performed substantially similar work to [the p]laintiff"; and there, the plaintiff simply referred to "less qualified, junior medical assistants," without identifying whether those assistants were of a different gender. *See Rivera v. Children's & Women's Physicians of Westchester, LLP*, No. 16-

CV-00714, 2017 WL 1065490, at *11 (S.D.N.Y. Mar. 18, 2017). Moreover, while it is true that "plop[ping] 'upon information and belief' in front of a conclusory allegation [] thereby [does not] render it non-conclusory" (Reply at 5-6), a mere line further along in the *Wu v. Good Samaritan Hospital Medical Center* case, upon which Defendants rely, clarifies that "[t]hose magic words will only make otherwise unsupported claims plausible when the facts are peculiarly within the possession and control of the defendant." No. 17-CV-04247, 2019 WL 2754865, at *4 (E.D.N.Y. July 2, 2019). It is settled that "[i]nformation about how much a coworker is paid would seem to be precisely the type of information [p]laintiffs would not have access to until discovery"; and thus, Plaintiff's allegations resting "upon information and belief," are not fatal to his claims, at least at this stage, and under these circumstances. *See Barrett v. Forest Laboratories, Inc.*, 39 F. Supp. 3d 407, 432 (S.D.N.Y. 2014).[7]

Finally, Defendants argue that Plaintiff does not plausibly allege that his job duties were "substantially identical" to Whitman's to survive their motion to dismiss, stating that "Plaintiff does not allege to have knowledge of what the former BSA Officer's actual duties were during her tenure," and that Plaintiff could not have worked an "identical" position to Whitman, if he also is alleging that he was never appointed as a BSA Officer. (Def. Br. at 13). However, even if Plaintiff was never properly appointed as BSA Officer, he still retained the title of "VP, BSA Officer," and alleges that he "did the work of BSA Officer to the best of his ability," which presumably would be in accordance with the same regulations that Whitman would have been obligated to abide by as well. (Pl. Br. at 13; AC ¶¶ 71-74).

---

[7] The Court acknowledges that the reasoning in *Barrett* rings true here as well – it may be the case that "if the comparator is not paid any more than the plaintiff – the complaint can be disposed of quickly on summary judgment after minimal discovery," however, at the moment, Plaintiff's Equal Pay Act claim survives. *Barrett*, 39 F. Supp. 3d at 432.

Accordingly, and based on the above, the Court finds that Plaintiff has sufficiently pled violations of the Equal Pay Act to survive a motion to dismiss. Defendants' motion to dismiss is denied as to this claim.[8]

### B. Plaintiff's Third Claim for Relief: Age Discrimination under the ADEA

Plaintiff's third claim for relief asserts a claim for age discrimination under the ADEA against the Entity Defendants.

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff asserting an employment discrimination [claim] under the ADEA must plausibly allege that adverse action was taken against h[im] by her employer, and that h[is] age was the 'but-for' cause of the adverse action." *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 31–32 (2d Cir. 2016) (citing *Vega*, 801 F.3d at 87). Similar to a Title VII claim, a plaintiff's pleading burden is minimal and they need only "plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality." *Id.* (citing *Littlejohn,* 795 F.3d at 310–11; *see also Canada v. Perkins Coie LLP*, No. 18-CV-11635, 2020 WL 895705, at *1 (S.D.N.Y. Feb. 18, 2020)). As to the "but-for" factor, it is well-settled that

---

[8] Defendants' motion is also denied as to the Individual Defendants. Defendants state in a conclusory fashion that "there are no factual allegations concerning any individual Defendant with respect to ownership interest, operational control, or the power to determine salaries or make hiring decisions," and then, in response to Plaintiff's opposition brief, state that Plaintiff's allegation that the Individual Defendants "own shares" without more, is "insufficient to establish individual liability," without citation to any supporting case law. (Def. Br. at 14; Reply at 13). In fact, the AC states more: namely, that "[e]ach of the individual defendants has an ownership interest in defendants CF Bankshares, Inc. and CFBank, N.A., and are thus subject to individual liability," and "[i]n addition, defendants O'Dell and McKinney exercised day-to-day control to the extent that no ownership interest would be necessary to impose personal liability as to each of them." (AC ¶ 125). Therefore, the Court finds that Plaintiff has also sufficiently pled an Equal Pay Act Claim as to each of the Individual Defendants. *See Bonner v. Guccione*, No. 94-CV-07735, 1997 WL 362311, at *13 (S.D.N.Y. July 1, 1997); *cf. Setelius v. National Grid Elec. Servs. LLC*, No. 11-CV-05528, 2014 WL 4773975, at *35 n.33 (E.D.N.Y. Sept. 24, 2014) (clarifying that "[a]lthough the Second Circuit Court of Appeals has not addressed whether the EPA provides for individual liability, at least one district court in this Circuit has held that it does," and holding that the plaintiff did not sufficiently plead individual liability as defendant "lacked operational control of the corporation and any ownership interest, did not control significant functions of National Grid as a whole, or make decisions to hire or fire. While he did play a role with respect to determining salaries, as the record illustrates, it was not a determinative role").

simply pleading the minimum requirements of discrimination claim, *i.e.*, that the individual was part of the protected class and was then replaced by an individual younger than the 40-year threshold, is not enough, without more, to raise the "requisite inference of but-for causation under the ADEA." *See Wallace v. Esper*, No. 18-CV-06525, 2019 WL 4805813, at *7 (S.D.N.Y. Sept. 30, 2019).

Plaintiff alleges that "at all times herein," he was "over 40 years of age" (AC ¶ 115), and therefore is within the scope of protections afforded by the ADEA. *See Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 584 (2004) (noting that employees over 40 are protected by the ADEA). A plaintiff can state a claim under the ADEA by alleging "that his employer took an adverse action against him and that age was the but-for cause of the adverse action." *Kairam*, 793 F. App'x at 26. Like the Title VII claim, Plaintiff has adequately alleged that Defendant took an adverse action against him because he was terminated. The Court finds, however, that Plaintiff has not satisfied his minimal pleading burden and has failed to plausibly allege facts that permit an inference that Plaintiff was discriminated against *based on* his age.

Plaintiff principally relies on one factual allegation to support an inference that Plaintiff's age was the "but-for" cause of his termination: that after he was terminated "based on a wrongful belief that he could not act as BSA Officer . . . because of age," he was "replaced as BSA Officer by someone under 40 years of age," specifically, and "upon information and belief," an individual identified as "Ashley Garneret." (AC ¶ 15; *see also id.* ¶ 85). This allegation is insufficient for the Court to make the requisite minimal inference that Plaintiff's age was a "but-for" cause of his termination. For instance, Plaintiff does not include any allegations about comments directed to him that were made by any individuals concerning his age. *See Marcus*, 661 F. App'x at 33 ("Without more, the mere fact that an older employee was replaced by a younger one does not

22

plausibly indicate discriminatory motive."); *but see Wallace*, 2019 WL 4805813, at *7 ("ageist comments" in addition to the minimum requirements of a discrimination claim, considered together, were enough to "nudge [plaintiff's] ADEA claim across the line from conceivable to plausible to proceed."). The Court also notes that Plaintiff pleads that "at all times herein" he was over 40 years old, including when he was hired by Defendant CFBank, which "substantially weakens any inference of discrimination on Defendants' part." *Spires v. MetLife Group, Inc.*, No. 18-CV-04464, 2019 WL 4464393, at *8 (S.D.N.Y. Sept. 18, 2019) (collecting cases).

Plaintiff's allegations, unsupported by a single example of how younger employees were favored, what unfair treatment Plaintiff was subjected to or what, if any, comments were made specifically concerning his age, are not sufficient to infer that Plaintiff was discriminated against based on his age. Accordingly, these conclusory allegations, viewed together with the allegation that Plaintiff was already a member of the protected class when hired, inform the Court that Plaintiff's ADEA claim must be dismissed.

II.     Plaintiff's State Law Claims and Choice of Law

A.     Plaintiff's Statutory State Law Claims

Plaintiff's fifth through seventh and eighth through tenth claims for relief allege discrimination in violation of the NYSHRL and ORC, respectively, against all Defendants. Specifically, Plaintiff's fifth and sixth claims for relief allege gender discrimination and hostile work environment in violation of NYSHRL; Plaintiff's seventh claim for relief alleges age discrimination in violation of NYSHRL; Plaintiff's eighth and ninth claims for relief allege gender discrimination and hostile work environment in violation of the ORC; and Plaintiff's tenth claim for relief alleges age discrimination in violation of the ORC.

The Parties do not conduct a choice of law analysis for Plaintiff's state law statutory claims. Instead, the Parties brief these claims as though relief could be afforded as to both New York and Ohio's statutory schemes, without providing any support for such course of action. Clearly, "[i]t is well established that where a plaintiff challenges a single course of employer conduct under laws of two different states, such circumstances present a choice of law question." *See Hernandez v. Off. of the Comm. of Baseball*, No. 18-CV-09035, 2019 WL 3034841, at * 2 (S.D.N.Y. July 11, 2019) (holding that it was improper for the plaintiff to challenge the same acts under both the ORC and the NYSHRL, instead of seeking to "challenge one set of allegedly unlawful employment practices under New York law and a distinct set of discriminatory conduct under Ohio law").

Here, while neither party has conducted such an analysis, it is plain that Plaintiff's claims are in fact premised upon "a single course of employer conduct," and therefore a choice of law question is apparent. (*Compare* AC ¶¶ 127-147, *with id.* ¶¶ 148-169) (identical allegations aside from citations to ORC and NYSHRL). Without the benefit of the parties' analysis, the Court declines to conduct this analysis *sua sponte*. It is not apparent to the Court that the facts necessary to complete the determination are "sufficiently clear." *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 255 (S.D.N.Y. 2020); *see also Berris v. Choi*, No. 23-CV-04305, 2024 WL 4635251, at *2 (S.D.N.Y. Oct. 30, 2024) (declining to conduct a choice of law analysis where the relevant facts "are not clear"). Further, "it is not this Court's responsibility to raise and make counsel's arguments for them." *Keesh*, 2021 WL 639530, at *11 n.7. Accordingly, the Court denies Defendants' motion as to the fifth through tenth claims for relief.

B. <u>Plaintiff's Breach of Contract Claims</u>

Plaintiff's eleventh and sixteenth claims for relief allege breach of contract under New York and Ohio law, respectively, against the Entity Defendants, for the same set of facts. (AC ¶¶

170-174, 202-206). As detailed *supra*, with respect to Plaintiff's breach of contract claims, the Parties' briefing suggests that there is no conflict concerning the elements of the contract claim between New York and Ohio law. (*See* Def. Br. at 14-16; Pl. Br. at 13-14). However, like the statutory claims, the parties have not briefed the choice of law issue; and the Court is not inclined to do so *sua sponte*.

Under either state's law, Plaintiff must plead the following elements to sufficiently state a breach of contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citing *Tagare v. Nynex Network Sys. Co.*, 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996)); *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 906 (S.D. Ohio 2013) (citing *Pavlovich v. National City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (same)).

Plaintiff alleges that he entered into a contract with CFBank for employment with the title of "VP, BSA Officer," that he performed the functions of this position "to the best of his abilities, and with the bounds of the limitations placed upon him," that CFBank never performed its purported obligation to officially appoint Plaintiff as "BSA Officer," and Plaintiff suffered damages therefrom, including, in effect, lost profits. (AC ¶¶ 44, 171-174).

Defendants' principle arguments for dismissal of the breach of contract claims are as follows: (i) that Plaintiff fails to allege a "breach" of his employment contract, since he admits that he worked in a position that was "identical" to that of a "BSA Officer," and therefore could not have been damaged by any lack of appointment; (ii) the alleged "Offer Letter" contains no language obligating Defendants to appoint Plaintiff to the position of BSA Officer; and (iii) Plaintiff fails to sufficiently allege damages. (Def. Br. at 14-16). At this stage, the Court declines to dismiss Plaintiff's two breach of contract claims.

First, Plaintiff has sufficiently pled the elements of a breach of contract claim to survive Defendants' motion to dismiss. Plaintiff's allegations are plain and straightforward.

While Defendants take issue with Plaintiff's damages allegations, the Court finds that Plaintiff's contentions of damages, including those for lost profits (*see* AC ¶ 44), are sufficient at this stage to "provid[e] a plausible basis . . . for damages[.]" *Goldblatt v. Englander Comms., LLC*, No. 06-CV-03208, 2007 WL 148699, at *4 (S.D.N.Y. Jan. 22, 2007); *Orange Barrel Media, LLC v. KR Sunset Weho, LLC*, No. 21-CV-04988, 2022 WL 2482766, at *4 (S.D. Ohio July 6, 2022). Further, as the Court has already declined to consider the Offer Letter in analyzing this motion to dismiss (*see supra*, Standard of Review, Sec. II), the Court declines to consider Defendants' argument concerning the alleged contents of such document.

Therefore, Defendants' motion to dismiss Plaintiff's eleventh claim for relief (Breach of Contract under New York law) and Plaintiff's sixteenth claim for relief (Breach of Contract under Ohio law) is denied.

### C. Plaintiff's Fraud-Based State Law Tort Claims

Plaintiff's twelfth through fifteenth and seventeenth through twentieth claims for relief allege fraud-based tort claims under New York and Ohio law against all Defendants. Specifically, Plaintiff's twelfth and seventeenth claims for relief allege fraud in the inducement under New York and Ohio law, respectively (AC ¶¶ 176-180, 208-212); Plaintiff's thirteenth and eighteenth claims for relief allege fraudulent misrepresentation under New York and Ohio law, respectively (*id.* ¶¶ 182-187, 214-219); Plaintiff's fourteenth and nineteenth claims for relief allege negligent misrepresentation under New York and Ohio law, respectively (*id.* ¶¶ 189-194, 221-226); and Plaintiff's fifteenth and twentieth claims for relief allege fraud under New York and Ohio law, respectively (*id.* ¶¶ 196-201, 228-233). With respect to these claims, the Parties' briefing suggests

that there is no conflict concerning the elements of the claims between New York and Ohio law. (*See* Def. Br. at 16-20; Pl. Br. at 14-18). However, like the statutory claims, the parties have not briefed the choice of law issue; and the Court is not inclined to do so *sua sponte*.

Defendants contend, *inter alia*, that Plaintiff's fraud claims for relief must be dismissed because they are duplicative of the breach of contract claims, (Def. Br. at 16-17), and are not pled with the requisite particularity required under Rule 9(b) of the Federal Rules of Civil Procedure (Def. Br. at 18-19; Reply at 10-11). The Court agrees.

### i. Plaintiff's Fraud-Based Claims are Duplicative

The basis of Plaintiff's fraud-based claims is that defendants falsely represented to Plaintiff that he would be the BSA Officer at CFBank, for the purpose of inducing him to enter into employment with CFBank and accept the position of VP, BSA Officer, without ever intending to actually appoint him to that position. (*See, generally,* AC ¶¶ 176-180, 208-212, 182-187, 214-219, 189-194, 221-226, 196-201, 228-233). Explicitly, Plaintiff asserts that "Defendants made this representation to [Plaintiff] so as to induce his reliance on it," that he "did rely on such representation . . . [which] was reasonable," and that "[s]uch fraud caused [Plaintiff] damages, including, but not limited to: (i) loss of employment; (ii) loss of income and benefits from employment; [and] (iii) loss of revenue and income from [Plaintiff's] separate business." (*See, e.g.*, *id.* ¶¶ 199-201).

To survive, Plaintiff's claims must be based upon a duty or misrepresentation collateral to and separate from the contract terms. Alternatively, Plaintiff must plausibly plead special damages. Otherwise, Plaintiff cannot turn a contract claim into a tort claim.

*1. Fraud in the Inducement*

Plaintiff's claim for fraud in the inducement, under both New York and Ohio law, is duplicative of his breach of contract claims, "unless the plaintiff '(i) demonstrate[s] a legal duty separate from the duty to perform under the contract; or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek[s] special damages[, the *Bridgestone/Firestone* factors].'" *Mariano v. CVI Invs. Inc.*, 809 F. App'x 23, 26 (2d Cir. 2020) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13, 19 (2d Cir. 1996) (first alteration added)); *Bibbs v. Allstate Ins. Co.*, No. 23-CV-01968, 2024 WL 4124171, at *9 (S.D. Ohio Sept. 9, 2024) (a claim of fraudulent inducement can only exist where the claim "asserts that a misrepresentation of facts outside the contract or other wrongful conduct induced a party to enter into the contract," or "[i]n other words, the claim involves some collateral misrepresentation.").

Plaintiff does not identify the existence of a duty outside his employment offer, events collateral to the contract, or plead any special damages resulting from the alleged misrepresentations (*see* AC ¶¶ 176-180).[9] Plaintiff's fraud in the inducement claims stem from the alleged misrepresentation by Defendants that Plaintiff would be the BSA Officer and be appointed as such by the Board of Directors of CFBank. (*Id.* at 25-29, 30-34). These allegations stem directly from Plaintiff's offer of employment, as Plaintiff pleads that it states that he will be "VP, BSA Officer," and that he "relied on the offer of employment and the position he was being offered, BSA Officer, and the opportunity to take responsibility for the day-to-day running of the bank's

---

[9] While Plaintiff states in his opposition brief, without support, that "special damages are sought," Plaintiff fails to provide any indication that the damages pled "aris[e] from . . . alleged misrepresentations that would not be covered by the contract claim." *See Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 293 (S.D.N.Y. 2023); *Wells Fargo Bank, N.A.*, 931 F. Supp. 2d at 839 ("a tort claim arising out of a breach of contract must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of contract"). Thus, Plaintiff's claims are not saved by his damages allegations.

BSA Compliance Program," and that such representation "was material and relevant and central to Mr. Cherner's acceptance of the position, and a representation on which he relied in accepting the position." (*Id.* ¶¶ 38-41). Thus, Plaintiff has pled issues stemming directly from his employment offer letter and has failed to plead a separate duty or misrepresentations extraneous or collateral thereto. *See Telesco v. Neuman*, No. 14-CV 3480, 2015 WL 2330166, at *3 (S.D.N.Y. Mar. 11, 2015) (dismissing fraud claim as duplicative "[b]ecause nothing" in the defendant's "alleged oral representations goes beyond what is contained" in the contract); *R.G. Barry Corporation v. Olivet International, Inc.*, No. 15-CV-00826, 2016 WL 51228, at *8 (S.D. Ohio Jan. 5, 2016) (granting motion to dismiss fraudulent inducement claim as the "representations that allegedly induced Plaintiff to enter into the Agreement are the same allegedly unfulfilled promises that give rise to the breach-of-contract claim"). These claims must be dismissed.

## 2. *Negligent Misrepresentation*

Negligent misrepresentation claims, under both New York and Ohio law, are duplicative of breach of contract claims, where "the duty between the parties arose out of a contract, such that the contract required a correct representation," and thus, "any misrepresentation must be pled as a breach of contract, not as a tort claim for negligent misrepresentation." *See Madison Capital Co., LLC v. Alasia, LLC*, 615 F. Supp. 2d 233, 240 (S.D.N.Y. 2009); *Hodell-Natco Industries, Inc. v. SAP America, Inc.*, No. 08-CV-02755, 2011 WL 2174365, at *8 (N.D. Ohio 2011) ("[a]s long as [plaintiff's] negligent misrepresentation claim, otherwise properly ple[d], invokes a duty that exists independent of the contract, it can survive a motion to dismiss.").

Here, Plaintiff's allegations stem from the representations that Plaintiff would "be the BSA Officer at defendant CFBank," and would be appointed as BSA Officer, and that such representation was made "negligently." (AC ¶¶ 189, 191-192, 221-223). These allegations are

insufficient, as the only duty that Defendants could plausibly have had to Plaintiff stems directly

from Plaintiff's employment. *425 Beecher, L.L.C. v. Unizan Bank, Natl. Assn.*, 927 N.E.2d 46, 58-

59 (Ohio Ct. App. 2010); *JoySuds, LLC v. N.V. Labs, Inc.*, No. 22-CV-03781, 2024 WL 4188293,

at *3 n.4 (S.D.N.Y. Sept. 13, 2024) (citing *Kitchen Winners NY Inc*, 668 F. Supp. 3d at 290-91,

for the premise that the "*Bridgestone/Firestone* factors" can be properly applied to a negligent

misrepresentation analysis, as that court "dismissed the [negligent misrepresentation] claim

because the plaintiff failed to state an extracontractual duty or to request special damages").

Accordingly, Plaintiff's negligent misrepresentation claims as pled are improperly duplicative of

the breach of contract claims and must be dismissed.

### 3.   Fraud and Fraudulent Misrepresentation[10]

Under both New York and Ohio law, to state a viable fraud or fraudulent misrepresentation

claim, "a plaintiff must do more than merely duplicate the factual and legal allegations of a breach

of contract claim," and the plaintiff must "identify something beyond the alleged breach of contract

to recover in fraud," specifically, a duty owed separately or matters collateral from that created by

the contract. *See Duff v. Centene Corp.*, 565 F. Supp. 3d 1004, 1023 (S.D. Ohio 2021); *Clean

Energy Experts v. Benhammou*, No. 23-CV-01940, 2024 WL 196507, at *3 (S.D.N.Y. Jan. 18,

2024) (relying upon the *Bridgeston/Firestone* factors and holding that in order to maintain a claim

for fraud where the allegations in the complaint allege "little more than intentionally-false

---

[10] Under both New York and Ohio law, fraudulent misrepresentation and fraud have the same "essential elements," are duplicative, and thus can be analyzed together as one claim. *See Ford v. New Century Mortg. Corp.*, 797 F. Supp. 2d 862, 873 (N.D. Ohio 2011) ("[i]n Ohio, [intentional misrepresentation and fraudulent misrepresentation] have the same essential elements"); *Found. for Moral Law, Inc., Infocision Management Corp.*, No. 07-CV-03121, 2008 WL 5725627, at *5 (N.D. Ohio May 27, 2008) (addressing fraud and intentional misrepresentation as "one" claim, as they possess the same elements); *Clean Energy Experts v. Benhammou*, No. 23-CV-01940, 2024 WL 196507, at *3-4 (S.D.N.Y. Jan. 18, 2024) (clarifying that intentional misrepresentation and fraud claims are "duplicative" and thus dismissing the intentional misrepresentation claim for the same reasons as the fraud claim, i.e., as duplicative of the contract claims).

statements indicating Defendants' intent to perform under the contract," for the plaintiff to nevertheless maintain a fraud claim it must "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract" or seek "special damages that are caused by the misrepresentation and unrecoverable as contract damages").

Here, the allegations are near-identical to those pled in the previous claims, and all the allegations stem only from Plaintiff's employment and subsequent termination from CFBank as VP, BSA Officer. (See AC ¶¶ 182-187, 196-201, 214-219, 228-233). Further, and similarly to the above, the only damages alleged are "(i) loss of employment; (ii) loss of income and benefits from employment; (iii) loss of revenue and income from [Plaintiff's] separate business." (*Id.* ¶¶ 187, 201, 219, 233). Therefore, as Plaintiff has failed to allege "something beyond the alleged breach of contract," any misrepresentations "collateral or extraneous to the contract," or special damages, and instead, alleges only representations that go "to the heart of the contract[] between the parties," Plaintiff's fraudulent misrepresentation and fraud claims are similarly duplicative of his breach of contract claims. *See Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 420-21 (E.D.N.Y. 2013); *Clean Energy Experts*, 2024 WL 196507, at *3. These claims as well must be dismissed.

### ii.   Plaintiff's Fraud Claims Violate Rule 9(b)

Defendants also argue that Plaintiff's fraud claims must fail because they do not meet the heightened pleading standard required under Rule 9(b) of the Federal Rules of Civil Procedure. (Def. Br. at 18-19; Reply at 10-11). The Court agrees.

Claims of fraud must be pled "'with particularity,'" *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 9(b)); *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014), and thus a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3)

state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent," *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004) (internal quotation marks omitted); *see also Bibbs*, No. 23-CV-01968, 2024 WL 4124171, at *10. "Rule 9(b) also requires plaintiffs to 'allege facts that give rise to a strong inference of fraudulent intent.'" *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166 (S.D.N.Y. 2021) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

First, Plaintiff fails to address Defendants' arguments concerning Rule 9(b), and thus, concedes this issue. *See Bushong v. Delaware City School Dist.*, No. 19-CV-00858, 2020 WL 419754, at *7 (S.D. Ohio Jan. 27, 2020); *30 Clinton Place Owners Inc. v. City of New Rochelle*, No. 13-CV-03793, 2014 WL 890482, at *1 n.1 (S.D.N.Y. Feb. 27, 2014) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them." (internal quotation marks omitted)). Even if that were not the case, Plaintiff's allegations with respect to his fraud claims do not meet the requisite level of "particularity," as they fail to set forth enough specificity to put each Defendant on notice of the content, speaker(s), and location, date, and time of the alleged misrepresentations. *See Filler v. Hanvit Bank*, No. 01-CV-09510, No. 02-CV-08251, 2003 WL 22110773, at *2 (S.D.N.Y. Sept. 12, 2003) (to successfully meet the heightened pleading requirements under Rule 9(b), the plaintiff "may not simply clump defendants together in vague allegations," and must "set forth separately acts complained of as to each defendant."); *see also Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) (affirming trial court's dismissal pursuant to Rule 9(b) as the plaintiffs "had not alleged with specificity who made particular misrepresentations and when they were made but rather . . . articulated general averments of fraud attributed to 'the defendants'").

32

Consequently, Plaintiff's fraud claims, specifically, claims twelve, thirteen, fifteen, seventeen, eighteen, and twenty, are separately dismissed because they fail to meet the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure.

      D.  <u>Plaintiff's Wrongful Discharge Claim</u>

Plaintiff's twenty-first claim for relief alleges wrongful discharge under Ohio law against the Entity Defendants. (AC ¶¶ 235-242). Here too the Court has no basis upon which to assume Ohio law applies here as the parties have failed to address the issue; and the Court is not inclined to do so *sua sponte*.

For Plaintiff to properly plead a claim for wrongful discharge under Ohio law, identified as a "Greeley claim,"[11] Plaintiff must allege: "(1) that a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation [the "clarity element"]; (2) that dismissal of the plaintiff-employee would jeopardize that policy [the "jeopardy element"]; (3) that the plaintiff-employee's dismissal was motivated by conduct related to the policy [the "causation element"]; and (4) that the employer lacked an overriding legitimate business justification for the dismissal [the "overriding justification element"]." *Shaker v. Village Voice Media, Inc.*, No. 04-CV-01881, 2005 WL 1277730, at *2 (N.D. Ohio May 26, 2005); *see also, generally Painter v. Graley*, 70 Ohio St.3d 377, 639 N.E.2d 51 (1994). Specifically, and pursuant to *Greeley*, a "discharged employee has a private cause of action sounding in tort for wrongful discharge where his or her discharge is in contravention of a 'sufficiently clear public policy.'" *Painter*, 70 Ohio St.3d at 384 (citing *Greeley*); *Rosen v. CBC Companies*, No. 05-CV-

---

[11] The "Greeley claim" is an exception to the well-established employment at will doctrine, and stems originally from *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990).

00757, 2006 WL 783371, at *2 (S.D. Ohio Mar. 24, 2006). Analysis of both the "clarity" and "jeopardy" elements are questions of law and may be determined at the motion to dismiss stage. *Rosen*, 2006 WL 783371, at *2 (citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 652 N.E.2d 653, 657-58 (Ohio 1995).

Defendants argue that Plaintiff's wrongful discharge claim must fail because the allegations do not indicate that his termination from CFBank "was in any way related to the public policy at issue – compliance with the Bank Secrecy Act," and he thus failed to articulate how his termination "jeopardized CFBank's compliance with the Act." (Def. Br. at 20-21). Defendants also point to Plaintiff's "inconsistent pleading," contending that the BSA could not have been violated by Plaintiff's termination because Plaintiff himself pleads that Foster remained in the BSA Officer position throughout the duration of his employment, and therefore Plaintiff effectively concedes that there was no violation of public policy. (*Id.*). Plaintiff responds by re-stating the elements of a wrongful discharge claim and explaining how each element is present in the AC. (*See* Pl. Br. at 19-20).

First, Plaintiff fails to respond to Defendants' arguments concerning Foster and the BSA Officer position, and therefore concedes that issue. *See Bushong*, 2020 WL 419754, at *7; *see also Santo's Italian Café LLC v. Acuity Ins. Co.*, 508 F. Supp. 3d 186, 207 (N.D. Ohio 2020) (It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). However, even if that were not the case, the Court agrees with Defendants, as Plaintiff has failed to sufficiently plead "the existence of an established public policy that was violated by [his] discharge." *Tracy v. Northrop Grumman Systems Corp.*, No. 08-CV-00126, 2009 WL 690255, at *3 (S.D. Ohio Mar. 12, 2009).

Specifically, the root of the Greeley exception is that the termination of the employee be in "contravention of a sufficiently clear public policy," and therefore require a tort remedy not otherwise available to him. *Painter*, 70 Ohio St.3d at 384. The AC sets forth a section on the "BSA Compliance Program," and specifically, that the "program requirement for a BSA Compliance Program," is that "[e]ach national bank and each savings association shall develop and provide for the continued administration of a program reasonably designed to assure and monitor compliance with the recordkeeping and reporting requirements set forth in subchapter II of chapter 53 of title 31, United States Code and the implementing regulations." Plaintiff further pleads that these requirements, and the requirements "for a BSA Officer to be appointed by the Board of Directors and for the Board of Directors to ensure that the BSA Officer has adequate resources and independence . . . constitute clear public policy found in Federal statutes and Federal regulations." (*See* AC ¶¶ 12-28, 235).

Even if the Court were to accept that Plaintiff has properly pled that the BSA Compliance Program is a "clear public policy," Plaintiff has failed to sufficiently allege that his individual discharge was in "contravention" of this policy. *See Shaker*, 2005 WL 1277730, at *2 (holding that where the articulated policy was "state and federal antitrust laws" and the "promot[ion] [of] free markets and fair competition and to protect consumers and competitors from restraint of trade and monopolies," the "nexus between antitrust policy and employment is not discernible" and thus, the plaintiffs could not "legitimately argue that the Sherman Antitrust Act or parallel state laws were jeopardized by the termination of their employment"). Plaintiff alleges that Foster was appointed as BSA Officer "at or around the time that his employment began," and since his termination, Foster "has either continued . . . as BSA Officer," or Defendants "put into place or

plan[ned] to put into place Ashley Garneret as BSA Officer," after his termination. (AC ¶¶ 46, 82, 85).

Looking only to the AC and taking Plaintiff's pleadings as true, both scenarios above, as well as Plaintiff's allegation that he was never officially appointed as BSA Officer and was terminated on the basis of gender discrimination (AC ¶ 86, 239) foreclose the possibilities that the BSA was jeopardized by the termination of Plaintiff's employment or that he was terminated in "contravention" of the BSA. *Tracy*, 2009 WL 690255, at *5 n.2 ("the jeopardy element is to protect society's interests, not necessarily a specific plaintiff"); *Cason v. Int. Truck and Engine Corp.*, 492 F. Supp. 2d 802, 814-15 (S.D. Ohio Sept. 28, 2005) (holding that state and federal anti-discrimination statutes "adequately protect the public policy embodied in those statutes, so that the public policy will not be jeopardized . . . in the absence of a common law claim for wrongful discharge in violation of that policy.").

Accordingly, Plaintiff's twenty-first claim of wrongful discharge is dismissed.

E.  Plaintiff's Intentional Infliction of Emotional Distress Claims

Plaintiff's twenty-second and twenty-fourth claims for relief allege intentional infliction of emotional distress under New York and Ohio law, respectively, against all Defendants, based upon the same set of facts. (AC ¶¶ 244-248, 257-261). As detailed *supra*, with respect to Plaintiff's intentional infliction of emotional distress claims, the Parties' briefing suggest that there is no conflict between New York and Ohio law. (*See* Def. Br. at 21-23; Pl. Br. at 20-21). The Parties, again, have failed to address which state's law applies to this case; and the Court will not do so *sua* sponte.

To plead a claim for intentional infliction of emotional distress under New York and Ohio law, Plaintiff must allege: "(1) extreme and outrageous conduct, measured by the reasonable

bounds of decency tolerated by society; (2) intent to cause or disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 550 (2d Cir. 2009) (internal quotation marks omitted); *French v. United States*, 195 F. Supp. 3d 947, 956 (N.D. Ohio 2016) (citing *Miller v. Currie*, 50.3d 3737, 377 (6th Cir. 1995) (same)). "The conduct alleged 'must consist of more than mere insults, indignities and annoyances.'" *Margrabe*, 353 F. App'x at 550 (citing *Leibowitz v. Bank Leumi Trust Co. of New York*, 548 N.Y.S.2d 513, 521 (N.Y. App. Div. 1989)). "When pleading intentional infliction of emotional distress, the bar is extremely high, and this highly disfavored cause of action is almost never successful." *Spencer v. Lab'y Corp. of Am. Holdings*, No. 19-CV-04927, 2020 WL 7024381, at *6 (E.D.N.Y. Nov. 30, 2020) (quoting *Sesto v. Slaine*, 171 F. Supp. 3d 194, 201-02 (S.D.N.Y. 2016)). "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999); *French*, 195 F. Supp. 3d at 956 ("[t]he question of 'outrageous' conduct is a question of law, and may be addressed in a motion to dismiss").

Where, as here, a plaintiff premises an intentional infliction of emotional distress claim on discrimination in the employment context, New York and Ohio courts are particularly reluctant to find that such conduct is sufficiently extreme or outrageous. *See, e.g.*, *Fertig v. HRA Medical Assistance Program*, No. 10-CV-08191, 2011 WL 1795235, at *6 (S.D.N.Y. May 6, 2011); *Gioia v. Forbes Media LLC*, No. 09-CV-06114, 2011 WL 4549607, at *12 (S.D.N.Y. Sept. 30, 2011) ("[C]ourts within this circuit have generally found allegations of discrimination, wrongful termination, and denial of benefits insufficient to satisfy the rigorous standard for extreme and outrageous conduct.") (collecting cases); *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d

566, 587 (E.D.N.Y. 2011) ("Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of [intentional infliction of emotional distress] because the conduct alleged is not sufficiently outrageous." (internal quotation marks and citations omitted)); *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 424 (E.D.N.Y. 2010) ("As a general proposition, adverse employment actions, even those based on discrimination, are not sufficient bases for intentional infliction claims."); *Bratton v. Lima Commc'ns Corp.*, No. 03-CV-07752, 2004 WL 1618834, at *3-4 (N.D. Ohio July 16, 2004); *Harris v. Pentair Flow Techs., LLC*, No. 19-CV-02180, 2020 WL 2558028, at *7 (N.D. Ohio May 20, 2020) ("Ohio places a particularly high bar on 'extreme and outrageous' conduct in the employer-employee relationship.").

Courts can and frequently do dismiss intentional infliction of emotional distress claims in a pre-answer motion where the conduct alleged, even accepted as true, is not sufficiently outrageous as a matter of law. *See, e.g.*, *Schaer v. City of New York,* No. 09-CV-07441, 2011 WL 1239836, at *7 n.4 (S.D.N.Y. Mar. 25, 2011) (stating that intentional infliction of emotional distress is "an extremely disfavored cause of action under New York law that is routinely dismissed on pre-answer motion"); *Stuto*, 164 F.3d at 827 (affirming dismissal of an intentional infliction of emotional distress claim on a Rule 12(b)(6) motion where the plaintiff failed to allege conduct that was sufficiently extreme and outrageous); *Semper*, 786 F. Supp. 2d at 587 (dismissing on a Rule 12(b)(6) motion the plaintiff's intentional infliction of emotional distress claim based on allegations in the employment context including a failure to promote, discrimination, retaliation, harassment, and termination because the plaintiff failed to show that the allegations rose to the "necessary level of outrageousness to sustain her claim"); *Harris*, 2020 WL 2558028, at *7 (dismissing the plaintiff's intentional infliction of emotional distress claim where there was no

allegation that the plaintiff "suffered a severe an debilitating emotional injury," when the plaintiff merely attempted to sustain such a claim by "alleging that the facts underlying his age discrimination claims were done intentionally," and failed to allege "something more").

Here, Plaintiff has pled no such conduct committed by any Defendants that could be construed as "extreme and outrageous." Accordingly, Plaintiff's twenty-second and twenty-fourth claims of intentional inflectional of emotional distress are dismissed.

### F.  Plaintiff's Negligent Infliction of Emotional Distress Claim

Plaintiff's twenty-third claim for relief alleges negligent infliction of emotional distress under New York law against all Defendants. (AC ¶¶ 249-255).

Similar to a claim for intentional infliction of emotional distress, in order for Plaintiff to plead a claim for negligent infliction of emotional distress under New York law, he must allege that defendant engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Meadows v. Planet Aid, Inc.*, 676 F. Supp. 2d 83, 97 (E.D.N.Y. 2009); *Romano v. SLS Residential Inc.*, 246 F.R.D. 441-42 (S.D.N.Y. 2007). While "physical injury is no longer a necessary component of a cause of action to recover damages for the negligent infliction of emotional distress," such recovery is nevertheless "extremely limited," and "must generally be premised upon breach of a duty owed directly to plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety." *Meadows*, 676 F. Supp. 2d at 97-98.

Here, the negligent infliction of emotional distress as alleged stems from the same underlying facts as those pled in support of Plaintiff's intentional infliction of emotional distress claims (*Compare* AC ¶¶ 244-248, 257-261; *with id.* ¶¶ 249-255), and thus, Plaintiff's claim for

negligent infliction of emotional distress fails for the same reasons. (*See supra*, at 35-38). Specifically, Plaintiff has pled no conduct committed by any Defendants that could possibly be called "atrocious" or "utterly intolerable in a civilized community," sufficient to meet the requisite standard for "extreme and outrageous conduct." *See Meadows,* 676 F. Supp. 2d at 97.

Additionally, the Court agrees with Defendants that Plaintiff's claim cannot be premised upon allegations of Defendants' purported intentional conduct (Def. Br. at 24), as such conduct "cannot form the basis for a claim grounded in negligence, including NIED [negligent infliction of emotional distress]." *Shapiro v. Jacobsen*, No. 23-CV-03964, 2024 WL 3675943, at *8 (S.D.N.Y. Aug. 5, 2024). Despite Plaintiff's reference to Defendants' "intentional, reckless, and negligent breach" of their duties to Plaintiff, his emotional distress allegations all bear the hallmark of allegations of intentional misconduct and thus must be dismissed on this ground as well. (*See* AC ¶ 254, Pl. Br. at 22 ("defendants were discriminating against him, were breaching the contract with him, had made false representations to him, were refusing to appoint him as BSA Officer as legally required, and [directed a] . . . deliberate and intentional campaign of harassment and intimidation to him")).

Accordingly, Plaintiff's twenty-third claim of negligent inflectional of emotional distress is dismissed.

## **MOTION FOR SANCTIONS**

### **Standard of Review**

"A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Parnoff v.*

*Fireman's Fund Ins. Co.*, 796 F. App'x 6, 8 (2d Cir. 2019) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)); *see also* Fed. R. Civ. P. 11(b).

"When deciding whether to grant Rule 11 sanctions, the Court applies an objective standard of reasonableness, and looks to, among other factors, whether the party acted in bad faith; whether they relied on a direct falsehood; and whether the claim was utterly lacking in support." *Melohn v. Stern*, No. 20-CV-05536, 2021 WL 1178132, at *3 (S.D.N.Y. Mar. 29, 2021) (quoting *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 526 (S.D.N.Y. 2017)); *see also StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) ("[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement." (internal quotation marks omitted)); *Ferrand v. Mystique Brands LLC*, No. 20-CV-05933, 2021 WL 119572, at *13 (S.D.N.Y. Jan. 13, 2021) (noting that Rule 11's objective analysis is "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments" (quoting *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999)).

Rule 11 is a powerful weapon and "should be reserved for extreme cases, and all doubts should be resolved in favor of the signing attorney." *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016) (internal quotation marks omitted), *aff'd*, 683 F. App'x 33 (2d Cir. 2017). As such, even if Rule 11 has been violated, imposing sanctions is a matter for the Court's discretion. *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012).

28 U.S.C. § 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." To impose sanctions

under § 1927, however, a "clear showing of bad faith" is required. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986), *cert. denied*, 480 U.S. 918 (1987).

Finally, the "inherent power" of the court to assess attorneys' fees is "an exception to the so-called 'American Rule', which provides that 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" *Revlon, Inc. v. Heaven Scent Cosmetics, Ltd.*, No. 89-CV-03582, 1991 WL 200209, at *11 (E.D.N.Y. Oct. 2, 1991) (quoting *Oliveri*, 803 F.2d at 1274). Moreover, this "inherent power" stems from "the fact that courts are vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999).

Further, similarly to § 1927, an inherent power award "may be imposed either for commencing or for continuing an action in bad faith, vexatiously, wantonly, or for oppressive reasons." *Oliveri*, 803 F.2d at 1274. In this context, bad faith may be found "only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Schlaifer Nance & Co., Inc.*, 194 F.3d at 336.

<u>Analysis</u>

Plaintiff contends, in his motion for sanctions under Rule 11, 18 U.S.C. § 1927, and the Court's inherent authority, that Defendants' counsel should be sanctioned because: (i) counsel acted in bad faith by improperly including and relying upon documents outside the AC, including the Board Minutes, and the OCRC dismissal; and (ii) counsel made speculative and frivolous factual allegations that are beyond the allegations of the AC. (Pl. Sanction Br. at 6-9). The conduct at issue is not of the type or caliber warranting sanctions under any of the three standards Plaintiff seeks to employ.

42

Plaintiff's arguments supporting sanctions, in part, are belied by the Court's adjudication of the motion to dismiss and motions to strike. *See Litras v. PVM Int'l Corp.*, No. 11-CV-05695, 2013 WL 4118482, at *12 (E.D.N.Y. Aug. 15, 2013). Further, the circumstances here do not amount to the level of an "extreme case[]" where Rule 11 sanctions should be warranted. *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016) (internal quotation marks omitted), *aff'd*, 683 F. App'x 33 (2d Cir. 2017).

The Court similarly holds that sanctions under either 18 U.S.C. § 1927, or the Court's inherent authority, are likewise not supported by the record at hand, as Plaintiff has failed to sufficiently allege "a clear showing of bad faith" by Defendants' counsel. *Oliveri*, 803 F.2d at 1273.

Accordingly, Plaintiff's motion for sanctions is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to the second claim for relief (Title VII Hostile Work Environment), the third claim for relief (Age Discrimination under ADEA), the twelfth through fifteenth and seventeenth through twentieth claims for relief (Fraud-Based Tort Claims under New York and Ohio law, respectively), the twenty-first claim for relief (Wrongful Discharge under Ohio law), the twenty-third claim for relief (Negligent Infliction of Emotional Distress under New York law), and the twenty-second and twenty-fourth claims for relief (Intentional Infliction of Emotional Distress under New York and Ohio law, respectively). The motion to dismiss is otherwise DENIED consistent with this Opinion.

Additionally, for the foregoing reasons, the parties' respective motions to strike are DENIED and Plaintiff's motion for sanctions is DENIED.

Defendants are directed to file an answer to the complaint within 14 days of the date of this Order. The Court will thereafter docket a Notice of Initial Conference.

The Clerk of Court is respectfully directed to terminate the motion sequences pending at Doc. 17, Doc. 28, and Doc. 45.

**SO ORDERED:**

Dated:    White Plains, New York
          June 23, 2025

_____
PHILIP M. HALPERN
United States District Judge